UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.

MATTHEW GREEN,

               Defendant.

_____/

Case No: 23-cr-20506
Hon. F. Kay Behm
U.S. District Judge

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (ECF NO. 34)

## I.    PROCEDURAL HISTORY

This matter is before the court on Defendant Matthew Green's ("Green") Motion to Dismiss Indictment (ECF No. 34). On September 6, 2023, the Government indicted Green on two charges: felon in possession of a firearm and felon in possession of ammunition, both under 18 U.S.C. § 922(g)(1), commonly referred to as a "felon in possession" law. Green filed his motion to dismiss the indictment on May 15, 2024; the Government responded at ECF No. 36 and Green replied at ECF No. 38. Central to Green's motion was the issue of whether § 922(g)(1) was constitutional under the U.S. Supreme Court's

decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).  While this motion was pending, the Sixth Circuit considered that question and determined that § 922(g)(1) "is constitutional on its face and as applied to dangerous people." *United States v. Williams*, 113 F.4th 637, 662 (6th Cir. 2024).  In light of the Sixth Circuit's holding in *Williams*, the parties submitted supplemental briefing on Green's motion.  ECF Nos. 44, 47, 48.  The court held a hearing on the motion on October 8, 2024, and this opinion follows.  For the reasons described below, the court finds that Green may lawfully be prohibited from possessing firearms and **DENIES** Defendant's Motion to Dismiss.

## II.   FACTUAL BACKGROUND

Green is a 32-year-old before the court on a charge of felon in possession while on supervised release on a 2017 felony conviction.  ECF No. 44, PageID.157.  Several of Green's five prior felony convictions are relevant to this case.  In 2009, when he was 17 years old, Green pleaded guilty to a drug trafficking offense involving the manufacture, creation, delivery, or possession with intent to deliver a controlled substance less than 50 grams in violation of Mich. Comp.

Laws § 333.7401(2)(a)(iv).  ECF No. 44, PageID.155.  In 2011, at the age of 19, Green pleaded guilty to Attempt Fleeing and Eluding Third Degree and Attempt Malicious Destruction of Property.  *Id.*  The offense involved law enforcement attempting to stop a vehicle driven by the defendant due to it having a stolen license plate.  PSR, ECF No. 49, PageID.185.[1]  Green fled from officers at a high rate of speed, ignoring red lights and one-way streets.  *Id.*  The defendant spun out of control on two occasions during the pursuit.  *Id.*  After losing control the first time, Green drove the vehicle through the front yards of four residences. *Id.*  When the defendant re-entered the roadway, he side swiped a patrol vehicle.  *Id.*  After the second spinout, Green fled from officers on foot and was eventually apprehended hiding under a vehicle.  *Id.*  Green fought with officers and had to be forcibly handcuffed.  *Id.*

In 2017, when he was 26 years old, Green was charged in the Eastern District of Michigan with felon in possession of a firearm and possession with intent to distribute.  ECF No. 44, PageID.156.  Flint Police executed a search warrant at Green's home, which he shared

---

[1] PSR citations are to the Presentence Report in case 17-cr-20822, which was filed under seal as Exhibit 1 to the Government's Supplemental Response to this Motion (ECF 48, 49).

with Ms. Carr and their two children, and seized 127 grams of a substance containing heroin as well as firearms located in the home. *Id.* at PageID.157. Green pleaded guilty to possession with intent to distribute. He was sentenced to 70 months in prison and was released in August 2022. *Id.*

Green also has several other convictions for drug use, drug possession, and driving charges. *See generally* PSR, ECF No. 49. Green was on supervised release at the time of this offense. ECF No. 44, PageID.157.

## III.   STANDARD OF REVIEW

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codified a pre-existing "individual right." 554 U.S. 570, 579-81, 592 (2008). This right protects the ability to keep, for "lawful purposes," the kinds of weapons in common usage, like those used for self-defense. *Id.* at 625, 627 (quotation omitted). *Heller* cautioned that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," like § 922(g)(1). *Id.* at 626. Thus even after *Heller*, many courts of appeals, including the Sixth Circuit, refused to hear as-applied challenges to

§ 922(g)(1). *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010).

The U.S. Supreme Court upended that tradition in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *Bruen* required the government to show that a regulation's infringement on a particular citizen's Second Amendment right was "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. The scope of that inquiry remained unclear. *See United States v. Rahimi*, 144 S. Ct. 1889, 1927 n.1 (2024) (Jackson, J., concurring) (collecting cases). The Supreme Court then attempted to clarify *Bruen*'s holding in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). *Rahimi* emphasized that firearm regulations need not have a historical "twin" to be valid. *Id.* at 1898 (quoting *Bruen*, 597 U.S. at 30). Instead, the relevant inquiry is whether the challenged regulation is consistent with the "principles that underpin our regulatory tradition." *Id.*[2] In light of *Bruen* and *Rahimi*, the Sixth Circuit considered whether § 922(g)(1), a federal

---

[2] Still, the exact method of that approach remains unsettled. *Compare Rahimi*, 144 S. Ct. at 1908 (Gorsuch, J., concurring) ("[W]e have expressly rejected arguments that courts should . . . glean from historic exceptions overarching 'policies,' 'purposes,' or 'values' to guide them in future cases"); *with id.* at 1925 (Barrett, J., concurring) (noting that "historical regulations reveal a principle, not a mold"); *and id.* at 1932 (Thomas, J., dissenting) (arguing that a founding-era law "must be 'well-established and representative' to serve as a historical analogue" to a modern regulation).

"felon in possession" law, remained a constitutional mechanism for disarming people in *United States v. Williams*. *See* 113 F.4th 637 (6th Cir. 2024). *Williams* is a published decision in which the court concluded that 18 U.S.C. 922(g)(1) is constitutional on its face and as applied to "dangerous" people. *Id.* at 663. It also set forth the standard for determining whether a person convicted of a felony is "dangerous" and can be disarmed. "When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record," "as well as other judicially noticeable information." *Id.* at 660.

Under the *Williams* framework, criminal convictions can broadly be separated into three categories. The first category encompasses crimes against a person such as murder, rape, assault, and robbery, which speak "directly to whether an individual is dangerous." *Id.* at 658. In this category, the burden of proof to show non-dangerousness is "extremely heavy." *Id.* ("[V]iolent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question."). The second category encompasses crimes like drug trafficking or burglary. "[T]hese crimes put someone's safety at risk,

and thus, justify a finding of danger." *Id.* at 659. The Sixth Circuit's

analysis of drug trafficking's dangerousness is noted as follows:

> "[D]rug trafficking is a serious offense that, in
> itself, poses a danger to the community." *United
> States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir.
> 2010). In addition, it often leads to violence. *See,
> e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 1002
> (1991) (Kennedy, J., concurring in part and
> concurring in the judgment).

*Id.*

The final category includes crimes like mail fraud or making false

statements. Often, such crimes cause no physical harm to another

person or the community, and the *Williams* panel indicated that a

defendant's burden is low because district courts should generally find

that these crimes "don't make a person dangerous." *Id.*[3]

In a final development, the same day this court heard oral

argument on this motion, the Sixth Circuit released and recommended

for publication its decision in *United States v. Goins*, No. 23-5848, 2024

---

[3] A note on phrasing: this court attempts to use, where possible, language that centers the dangerousness of the crime and acts at issue. Convictions based on crimes which put another person's safety at risk are valid bases for disarming someone under § 922(g)(1). *Williams*, at *40-41. As the Supreme Court put it: "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024); *see also United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (holding that the offense of drug trafficking itself poses a danger to the community).

WL 4441462, at *7 (6th Cir. Oct. 8, 2024).  *Goins* held that "[i]n addition
to disarming the dangerous, our nation's historical tradition of
forfeiture laws, which temporarily disarmed convicts while they
completed their sentences, also supports disarming those on parole,
probation, or supervised release." *Id.* at *5.  Thus, in addition to the
*Williams* factors regarding the dangerousness of a defendant's acts,
possession of a firearm during supervised release on a felony offense is
another factor weighing against an as-applied challenge to § 922(g)(1).[4]

## IV.   ANALYSIS

Green has three felony convictions that fit within *Williams'* second
category because they put someone's safety at risk.  His conviction for
fleeing and eluding involved danger to others; his reckless driving while
fleeing the police put members of the public at risk of injury or worse.

---

[4] There is arguably some tension between these two recent decisions of the Sixth
Circuit.  *Goins* addressed possession of a firearm in violation of parole conditions on
a state court conviction.  Although the court suggested this logic regarding the
justifications for temporary disarmament is easily imported to federal supervised
release for felony convictions, § 922(g)(1) is a permanent deprivation of the Second
Amendment right, not a temporary one.  *See Goins*, 2024 WL 4441462, at *7 ("While
those on probation, parole, *or supervised release* may not *permanently* lose their
Second Amendment right, a *temporary deprivation* that supports the state's
interests in reducing recidivism and protecting the public may be appropriate.")
(emphasis added).  In contrast, *Williams* does not appear to cast any doubt on the
proposition that some defendants may be permanently disarmed.

The court acknowledges that that conviction was 13 years ago. *Williams* does not give any guidance to the district courts how it ought to weigh factors such as the defendant's age at the time of their conviction or the age of the conviction itself.  The court recognizes that convictions over 10 years old are sometimes recognized as having less probative value in regarding a person's current demeanor.  *See* Fed. R. Evid. 609 (regarding the admissibility of previous convictions to prove a witness' character for truthfulness).  But the court understands the *Williams* test to speak to the dangerousness of the crimes on a person's record, not to require an exhaustive presentation or hearing involving witnesses to test a defendant's present state of mind.  His conviction for fleeing and eluding did place others in danger; with that said, the age of that conviction weighs against considering it heavily.

Green's two drug-trafficking convictions, meanwhile, are crimes specifically identified by the Sixth Circuit as those "that inherently pose[] a significant threat of danger[.]" *Williams*, 113 F.4th at 663.  It is difficult to discern what exactly might be a non-dangerous drug-trafficking conviction, if drug trafficking is inherently a dangerous crime.  Perhaps the court envisioned a solitary conviction for playing

9

merely some sort of peripheral, bookkeeping role in a drug trafficking conspiracy, because to qualify the crime would need to pose no threat of physical harm to others. *See id.* at 659 ("[C]rimes [that] put someone's safety at risk . . . justify a finding of danger."). But the circumstances of Green's multiple drug trafficking convictions are not like those identified by the Sixth Circuit as non-dangerous, such as mail fraud or making false statements.

In 2009, Green pleaded guilty to his first drug trafficking charge: delivery/manufacture a controlled substance less than 50 grams. His only argument on the dangerousness of that offense was that it was committed when he was a minor (though that offense, too, is more than 10 years old). *See* ECF No. 44, PageID.155. As noted, *Williams* does not indicate how a court should weigh a defendant's age at the time they committed an offense. The court is cognizant that an offense committed while still a minor is generally considered to have less probative value to determining the present characteristics of a person. *See* Fed. R. Evid. 609 (limiting the admissibility of juvenile adjudications as probative of truthfulness); *Graham v. Florida*, 560 U.S. 48, 68 (2010) ("Juveniles are more capable of change than are adults,

and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults.").

However, even assuming that Green's age during his 2009 offense and the age of that conviction are sufficient to meet his burden to show that it was non-dangerous, his second drug trafficking charge, at age 26 in 2017, is the most relevant conviction for purposes of the instant motion because the underlying acts plainly posed a danger to other people.  In that case, Green's girlfriend and two of his young children were in the same home that combinations of heroin and fentanyl were recovered.  During the investigation of that offense, officers found additional evidence indicative of drug trafficking beyond the weapons and drugs recovered from Green's home, including a digital scale in the kitchen and text messages on Green's cell phone that concerned controlled substance distribution.  PSR ¶¶ 16–17.  Even if he was not "connect[ed] to organized crime," as Green asserts in his motion, *see* ECF No. 44, PageID.158, his role was not peripheral to the drug trafficking operation.  *See* ECF No. 44, PageID.158.  Additionally, the fact that Green has multiple convictions for the same dangerous offense weighs against a finding that § 922(g)(1) may not be applied to him.

Drug trafficking is a presumptively dangerous felony; it is the defendant's burden to overcome that presumption. Whatever scenario might qualify as a non-dangerous drug trafficking charge, the court does not find it here.

Finally, Green's felon in possession charge occurred while on supervised release on that same 2017 conviction. ECF No. 44, PageID.157. The justifications for disarming Green during his supervised release on a dangerous crime are even stronger than they might otherwise be (though this court does not doubt Congress' ability to permanently disarm felons who commit dangerous crimes). *See United States v. Goins*, No. 23-5848, 2024 WL 4441462, at *7 (6th Cir. Oct. 8, 2024). Under the totality of the facts here, Congress could lawfully disarm Green.

## V.    CONCLUSION

The court finds that the Defendant Green has not rebutted the heavy presumption that his record includes convictions for crimes which posed a danger to others and the community and that § 922(g)(1) may constitutionally be applied to him. Therefore, the court **DENIES** Defendant's Motion to Dismiss his indictment under § 922(g)(1).

**SO ORDERED**.


Date: October 10, 2024          <u>s/F. Kay Behm</u>
                                F. Kay Behm
                                United States District Judge